IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                          Case No. 1:22-cr-1907-WJ

MAURICE LACEY,

    Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR SPEEDY TRIAL VIOLATION

**THIS MATTER** is before the Court on *pro se*[1] Defendant Maurice Lacey's Motion to Dismiss for Violations of His Right to a Speedy Trial (**Docs. 85 & 88**). The United States opposes the motion (**Doc. 93**). Having reviewed the pleadings and the applicable law, the Court concludes the Government did not violate the Speedy Trial Act or Defendant's Sixth Amendment right to a speedy trial. Accordingly, the motion is **DENIED**.

### BACKGROUND

Mr. Lacey was charged by criminal complaint (**Doc. 1**) on October 25, 2022, with being a felon in possession of a firearm. About a week later, on October 31, 2022, he was arrested (**Doc. 4**) and made his initial appearance before the Magistrate Judge.

In early November 2022, Mr. Lacey moved to proceed *pro se* (**Doc. 16**). He then waived his preliminary hearing and right to contest pretrial detention (**Docs. 13 & 14**). On November 23,

---

[1] The Court affords "a liberal construction to pleadings of a defendant appearing *pro se*." *United States v. Mora*, 293 F.3d 1213, 1216 (10th Cir. 2002). Of note, within days of making his initial appearance, Mr. Lacey expressed an intense desire to represent himself. On November 7, 2022, U.S. Magistrate Judge Ritter approved Mr. Lacey's request to proceed *pro se* and simultaneously appointed standby counsel, which was the appropriate course of action at the time.

2022, a federal grand jury indicted Mr. Lacey (**Doc. 18**) for the same §§ 922(g) and 924 offenses. At this point in time, twenty-three days elapsed between his arrest and his indictment.

Following his indictment, Mr. Lacey was arraigned on December 1, 2022 (**Doc. 21**). The next day, trial was set for January 3, 2023 (**Docs. 22 & 23**). In this filing, the Court laid out its trial deadlines—including jury instructions, motions *in limine*, and motions to continue (**Doc. 23 at 1**). Prior to the motions' deadline, Mr. Lacey filed a notice of expert witness (**Doc. 27**). This filing was docketed on December 9, 2022. Sixteen days on the speedy trial clock passed from indictment to the filing of this motion.

Then, on December 13, 2022, the United States filed a motion to continue (**Doc. 28**). Specifically, the United States moved for a continuance based upon Mr. Lacey's *pro se* expert notice (**Doc. 27**) that lacked an identified expert, draft report, or disclosures (**Doc. 28 at ¶ 7**). Three days later, the Court granted the motion to continue (**Doc. 29**) based upon Mr. Lacey's *pro se* motion. 18 U.S.C. § 3161(h)(1)(D). In its Order, the Court excluded time, for Speedy Trial Act purposes, from the filing of Mr. Lacey's motion until the reset trial date of March 6, 2023. ***Id.* at 1–2**.

During this period of excludable delay following the continuance, a lot happened. First, Mr. Lacey withdrew his notice of an expert (**Doc. 30**). Then, on February 10, 2023, standby counsel filed a motion moving for a competency evaluation pursuant to 18 U.S.C. § 4241(b) (**Doc. 42**). The Court necessarily vacated the March trial date, **Doc. 46**, before ultimately granting standby counsel's motion (**Doc. 51**) on March 13, 2023. Between March and May, Mr. Lacey underwent a competency evaluation and was found incompetent to stand trial (**Doc. 55**). Following the conclusion of this evaluation, the Court held a hearing (**Doc. 59**), on May 11, 2023—at which time

2

Mr. Lacey's right to proceed *pro se* was revoked and new standby counsel[2] was appointed (**Doc. 60 at 3**).

A few days later, on May 16, 2023, the United States filed a motion seeking a second competency evaluation (**Doc. 61**). *See United States v. Anderson*, 679 F. App'x 711, 712–13 (10th Cir. 2017) (unpublished) (explaining that once a Defendant is found "mentally incompetent", upon request of the Government, the Court has no discretion and "must" commit the Defendant to the custody of the Attorney General); *cf.* 18 U.S.C. § 4241(d). Four days elapsed between the Court's Supplemental Order (**Doc. 60**) and the United States' filing of their motion (**Doc. 61**). Four additional unexcludable days will be counted during this period where no motions were pending and the (first) competency evaluation was completed. Thus, a total of **twenty days** of post-indictment speedy trial time had elapsed.[3]

When the Court granted the United States' motion for a second evaluation over Mr. Lacey's strenuous objection, it explicitly excluded "the period of commitment" from speedy trial calculations (**Doc. 64 at 7**). 18 U.S.C. § 3161(h)(1)(A). Mr. Lacey was committed to the custody of the Attorney General so that another competency evaluation could be performed at a Bureau of Prisons medical facility. 18 U.S.C. §§ 4241(b), 4247(b). The parties appeared for a hearing on the second evaluation on December 13, 2023 (**Doc. 74**). On December 15, 2023, the Court found Mr. Lacey was competent to stand trial and proceed *pro se* (**Doc. 75**).

An Order and Notice of Trial was filed by the Court on January 9, 2024 (**Doc. 79**). In this Order, the motions' deadline was set for March 4, 2024. The trial was set for March 25, 2024. The

---

[2] Mr. Lacey was upset at original stand by counsel's motion for a competency evaluation so new stand by counsel was appointed.

[3] In calculating the total days of elapsed speedy trial time, the Court added: (1) the sixteen days between November 23, 2022, and December 9, 2022, with (2) the four days of nonexcludable speedy trial time in between competency evaluations from May 12–May 16, 2023.

Court also explained[4] the time from finding Defendant competent until jury selection was to be excluded for purposes of the Speedy Trial Act (**Doc. 79 at 1**). This Order tolled all the time from December 15, 2023, to March 25, 2024.

Considering the numerous delays from competency evaluations and pretrial motions, a negligible amount of time under the Speedy Trial Act has actually passed. As it stands, twenty-three days passed from arrest to indictment and twenty days have passed since indictment. As detailed above, the remaining four hundred days have been properly excluded (and documented in numerous Orders). An application of the Speedy Trial Act as well as the *Barker v. Wingo*, 407 U.S. 514 (1972) framework shows quite clearly that Defendant Lacey's right to a speedy trial has not been violated.

## DISCUSSION

In his instant motion, Defendant Lacey argues that the Government violated his statutory (Speedy Trial Act) and Sixth Amendment speedy trial rights. **Docs. 85 & 88**. The Court disagrees and finds that no violation to his statutory or constitutional speedy trial rights occurred.

**I. Speedy Trial Act**

The Speedy Trial Act was enacted to assist courts in protecting the interests embodied in the Speedy Trial Clause. *United States v. Loud Hawk*, 474 U.S. 302, 304 n.1 (1986). Under the Act, the Government must indict a Defendant within thirty days of the arrest. 18 U.S.C. § 3161(b). The Act also requires Defendants be brought to trial within seventy days of their indictment. 18 U.S.C. § 3161(c)(1). At the same time, however, the Act allows for certain periods of delay to be excluded from the seventy-day requirement. *United States v. Hicks*, 779 F.3d 1163, 1170 (10th

---

[4] The Court explained that additional time was necessary to allow for pretrial motions, hearings, and trial preparation. *See* 18 U.S.C. § 3161(h)(7)(B)(i)–(iv). The Court also explained that the ends of justice were served by continuing the trial. 18 U.S.C. § 3161(h)(7)(A).

Cir. 2015); 18 U.S.C. § 3161(h). Of note, these statutorily authorized periods of excludable delay include competency proceedings, periods of pending pretrial motions, and ends of justice continuances. 18 U.S.C. §§ 3161(h)(1)(A), (h)(1)(D), (h)(4), (h)(7).

The constitutional and statutory rights to a speedy trial operate in tandem—with the Act providing timelines that effectuate the right to a speedy trial. *United States v. Keith*, 61 F.4th 839, 845 (10th Cir. 2023); *United States v. Medina*, 918 F.3d 774, 779 (10th Cir. 2019). It is no surprise, then, that it will be an "unusual case"[5] in which the Speedy Trial Act is followed, but the Constitution violated.

To show an "STA violation" a Defendant must demonstrate that "more than 70 unexcludable days" have elapsed. *Keith*, 61 F.4th at 852. Only twenty days of unexcludable time post-indictment have elapsed here. Necessarily, Mr. Lacey's motion to dismiss on statutory speedy trial grounds fails (**Doc. 93 at 6–9**) and, unsurprisingly, this case is not the "unusual" instance where a Sixth Amendment violation occurred despite compliance with the Act.

## II. Constitutional Speedy Trial Right

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. To determine whether a trial delay violates a Defendant's speedy trial right, federal courts must balance four factors: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his right to a speedy trial,

---

[5] Tenth Circuit precedent explains "it is unusual to find a Sixth Amendment violation when the Speedy Trial Act has been satisfied." *United States v. Abdush-Shakur*, 465 F.3d 464–65 (10th Cir. 2006). Although slightly different than our sister circuits' use of the phrase "unusual case"—the language in both indicates a violation of the Act is typically a precondition to holding a constitutional violation. In fact, the Seventh Circuit is the only court of appeals to have not deployed the "unusual" language in an opinion. *See, e.g., United States v. Mitchell*, 723 F.2d 1040, 1049 (1st Cir. 1983); *United States v. Black*, 918 F.3d 243, 277 (2d Cir. 2019); *United States v. Rodriguez-Mendez*, 2023 U.S. App. LEXIS 11558, at *11 (3d Cir. 2023) (unpublished); *United States v. Pair*, 84 F.4th 577, 589 (4th Cir. 2023); *United States v. Bieganowski*, 313 F.3d 264, 284 (5th Cir. 2002); *United States v. DeJesus*, 887 F.2d 114, 116 n.1 (6th Cir. 1989); *United States v. Thirion*, 813 F.2d 146, 154 (8th Cir. 1987); *United States v. Nance*, 666 F.2d 353, 360 (9th Cir. 1982); *United States v. Davenport*, 935 F.2d 1223, 1238–39 (11th Cir. 1991); *United States v. Rice*, 746 F.3d 1074, 1081 (D.C. Cir. 2014).

and (4) whether the delay prejudiced the defendant. *Barker*, 407 U.S. at 530. "No one factor is dispositive nor talismanic"—so all four must be considered. *United States v. Velazquez*, 749 F.3d 161, 174 (3d Cir. 2014); *see also United States v. Seltzer*, 595 F.3d 1170, 1176 (10th Cir. 2010). Upon consideration of all the *Barker v. Wingo* factors, the Court finds Defendant's constitutional speedy trial right has not been violated.

### A. Length of delay

Delays in excess of one year are presumptively prejudicial, **Doc. 93 at 10**, and require a full *Barker* analysis. *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006); *United States v. Hernandez*, 457 F.3d 416, 420 (5th Cir. 2006) ("A full-fledged four-factor analysis is warranted here because the total time from indictment to trial exceeded one year."). The speedy trial right attaches at either the arrest or indictment—whichever is earlier. *United States v. Marion*, 404 U.S. 307, 320–21 (1971). The Act then requires the Defendant be brought to trial within seventy days of the initial appearance or indictment (whichever occurs later). *See Medina*, 918 F.3d at 783; *see also* 18 U.S.C. § 3161(c)(1).

In this case, Mr. Lacey appeared for his initial appearance approximately fifteen months ago and was indicted approximately fourteen months ago. Accordingly, the delay is "presumptively prejudicial." *Doggett v. United States*, 505 U.S. 647, 652 (1992). The Court, therefore, turns to the second inquiry: "the extent to which the delay exceeds the bare minimum for judicial examination of the claim . . . based on the simplicity or complexity of the federal

charge." *United States v. Nixon*, 919 F.3d 1265, 1270 (10th Cir. 2019) (first quoting *Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir. 2004); then citing *Seltzer*, 595 F.3d at 1176).

The Court finds that the length of the delay is considerable. Especially so given "the uncomplicated nature of the felon-in-possession charge." *Nixon*, 919 F.3d at 1270. This factor weighs in Defendant's favor.

At the same time, however, this case has suffered delays due to Defendant's multiple competency proceedings, changes in counsel, request to proceed *pro se*, and filing of pretrial motions. Thus, despite a finding that the length of the delay weighs in Defendant's favor, the Court also finds the delay to be reasonable in light of 18 U.S.C. § 3161(h)(1)(A), (D).

**B. Reasons for delay**

When assessing the reasons for delay, the Court looks to assign[6] the cause to a particular party. *United States v. Lewis*, 586 F. Supp. 3d 1094, 1101 n.20 (D. Kan. 2022); *cf. Ali v. Commonwealth*, 75 Va. App. 16, 42 (Va. Ct. App. 2022) (explaining how speedy trial calculations assign "fault" to the parties). Put simply, delays attributable to a defendant do not weigh against the Government. *United States v. Larson*, 627 F.3d 1198, 1208 (10th Cir. 2010).

Here, the Government asserts that the vast majority of delays in this case are attributable to Mr. Lacey (**Doc. 93 at 11–14**). Specifically, the Government attributes the delay to Mr. Lacey's competency proceedings, changes in counsel and *pro se* status, and filing of pretrial motions. *Id*.

As an initial matter, Mr. Lacey filed a *pro se* motion to introduce expert testimony (**Doc. 27**) on December 9, 2022. As the Court's Order (**Doc. 28**) granting the continuance explained, motions toll the speedy trial clock. *See Loud Hawk*, 474 U.S. at 316–17; *United States v. Black*, 830 F.3d 1099, 1113 (10th Cir. 2016). Even though Mr. Lacey withdrew his notice of expert

---

[6] In the end, the Court agrees that "the United States shoulders little blame for the delays in this case." **Doc. 93 at 14**.

7

testimony (**Doc. 30**) on December 13, 2022, by that time, the Court had already continued the trial to March 2023. And, as the procedural timeline above indicates, it was during this time pending the continued trial that standby counsel requested, and the Court ordered, a competency evaluation under 18 U.S.C. § 4241.

The delay resulting from Mr. Lacey's competency[7] evaluations cannot be attributed to the Government. 18 U.S.C. § 3161(h)(1)(A). With respect to competency evaluations, it is important to note that the Court has an "independent obligation" to address competency issues when a defendant is asking to proceed *pro se*. *See United States v. Graham*, 429 F. App'x 783, 788 (10th Cir. 2011) (unpublished) (citing *United States v. Newman*, 733 F.2d 1395, 1400 (10th Cir. 1984)); *see also United States v. Collins*, 430 F.3d 1260, 1268 ("If a question as to [defendant's] competency again arises, the district court should order a psychological evaluation."); *cf.* 18 U.S.C. § 4241(a). The same heightened obligation applies to standby counsel. When standby counsel raises the question of competency, "the attorney triggers an evaluation process" that necessarily delays the resolution of the case. Anne Bowen Poulin, *The Role of Standby Counsel in Criminal Cases: In the Twilight Zone of the Criminal Justice System*, 75 N.Y.U. L. REV. 676, 714 (2000). Mr. Lacey's situation[8] is not unique though. The Tenth Circuit has explained that when standby counsel raises competency—even against a defendant's wishes—the right to proceed *pro se* is

---

[7] *See United States v. Taylor*, 353 F.3d 868, 869 (10th Cir. 2003) (explaining § 4247(b) does not limit the time excludable under the Speedy Trial Act for competency evaluations); *Johnson v. United States*, 333 F.2d 371, 374 (10th Cir. 1964) ("Appellant cannot complain of the denial of his constitutional right to a speedy trial because of his confinement in a State mental institution . . . for the very purpose of determining his competency to stand trial."); *United States v. Ruiz*, 854 F. App'x 259, 261 n.3 (10th Cir. 2021) (unpublished) (explaining a Speedy Trial Act claim premised upon a violation of § 4247(b) is foreclosed by *Taylor*).
[8] For an in-depth discussion of the role of standby counsel appointed to assist *pro se* Defendants, *see* 75 N.Y.U. L. REV. 676, 710–15 (2000). In this article, Professor Poulin explains that "At least in serious cases, defense counsel should raise, and the court should explore, the question of competency if any concern exists . . . while any defendant risks unfair results when representing herself, a defendant who is at best marginally competent is even more vulnerable." *Id*. at 714. She also pushes back on the notion that questions regarding a *pro se* Defendant's competency should be characterized as a "Catch-22"—given that neither the courts nor standby counsel can "allow" self-representation under such circumstances. *Id*. at 709–11.

paused until competency is resolved. *United States v. Boigegrain*, 155 F.3d 1181, 1185–86 (10th Cir. 1998). It should come as no surprise then that this was the course of action followed by the Court (**Doc. 60 at 3**).

Altogether, Defendant Lacey's competency proceedings lasted approximately ten months. Despite the fact that Mr. Lacey opposed (**Doc. 44**) standby counsel's motion (**Doc. 42**), the speedy trial time is not shifted back onto the Government. *United States v. Tigano*, 880 F.3d 602, 616 (2d Cir. 2018) (explaining that only in "an exceptional case" will "a delay caused by a defense attorney count[] against the government"). This case is not an exceptional one.

The same logic applies to the second competency evaluation (**Docs. 61 & 64**). Although opposed by Mr. Lacey, the time is clearly excludable under 18 U.S.C. § 3161(h)(1)(A), (D). The Court finds that the Government has had no control over Mr. Lacey's competency evaluation timeline (**Doc. 93 at 14**). This is especially true given that Mr. Lacey was uncooperative during his evaluations. *See* **Docs. 55 & 67** (stating Mr. Lacey "did not cooperate fully," "did not want to cooperate," and "refused to participate in the evaluation"); *see generally United States v. Loya-Rodriguez*, 672 F.3d 849 (10th Cir. 2012) (discussing the difficulties counsel and the court face when dealing with a Defendant who is uncooperative during competency proceedings); *United States v. Nunez*, 137 F. App'x 214, 215–16 (11th Cir. 2005) (*per curiam*) (discussing a Defendant who was "uncooperative" during competency proceedings despite his desire to proceed *pro se*). Mr. Lacey's behavior—whether it be uncooperative or obstructionist—is obviously a reason for the delay in the competency proceedings and this type of reason for delay cannot be attributed to the Government. *United States v. Stanley*, 396 F. App'x 482, 485–86 (10th Cir. 2010) (unpublished) (finding that defendant's complaints about "the delay resulting from the . . . competency evaluation" was properly attributable to the defendant's refusal to cooperate).

Further supporting attribution to Mr. Lacey is the fact that he insists on proceeding *pro se*. The statute[9] and case law[10] are clear—Mr. Lacey could not represent himself while his competency was in question (**Doc. 60**). Because the competency proceedings account for nearly all of the delay in Mr. Lacey's case, and because Mr. Lacey insists on proceeding *pro se*, this factor weighs in the Government's favor. Periods of delay involving incompetence or competency proceedings are excludable. 18 U.S.C. §§ 3161(h)(1)(A), (h)(4). Functionally, however, this was also a delay "due to the unavailability of a necessary individual" and is justified. *United States v. Tranakos*, 911 F.2d 1422, 1428 (10th Cir. 1990) (citing *Barker*, 407 U.S. at 531). Simply stated, nothing could happen until Mr. Lacey was found to be competent or restored to competence and thus, became "available." His desire to proceed *pro se* highlights the dilemma of a "necessary individual" being unavailable. Certainly, this delay cannot be attributed to the Government.

Mr. Lacey's motion does not identify any delays in the "deliberate" or "negligent" categories. *Barker*, 407 U.S. at 531. The final *Barker* category of delay is excusable delay. *Id.* As previously stated, over four hundred days of excusable delay are properly attributed to Mr. Lacey. Accordingly, the Court finds that the "reason for delay" factor weighs strongly in favor of the Government. *Hicks*, 779 F.3d at 1168.

**C. Mr. Lacey's assertion of the right**

Mr. Lacey contends he "invoked his Federal Speedy Trial Act" right about one week after he requested to proceed *pro se* (**Doc. 85 at 2**). This date would be sometime in November 2022. Mr. Lacey further avers that during the *Faretta* hearing he "made it clear" that "one of his main

---

[9] In its Supplemental Order, the Court cited to 18 U.S.C. § 4247(d); *cf.* 18 U.S.C. § 3161(h)(4).
[10] The Court cited the Supreme Court's holding in *Pate v. Robinson*, 383 U.S. 375 (1966) for the proposition that a non-waivable right to counsel attaches during competency proceedings. Although this right to counsel does not apply to competent *pro se* Defendants, *Torrence v. Peterson*, 2022 U.S. App. LEXIS 35854 (10th Cir. 2022) (unpublished), the Court cited various out-of-Circuit cases explaining a Defendant may not represent himself when his competency is at issue. *United States v. Ross*, 703 F.3d 856, 871 (6th Cir. 2012); *United States v. Klat*, 156 F.3d 1258, 1263 (D.C. Cir. 1998); *United States v. Purnett*, 910 F.2d 51, 55 (2d Cir. 1990).

10

purposes in being *pro se* was to avoid any form of prolonging the case." *Id.* While the Court acknowledges Mr. Lacey might have thought he articulated this right at the *Faretta* hearing, the transcript contains no such assertion (**Doc. 37**). According to the docket, Mr. Lacey first asserted[11] his speedy trial rights (**Doc. 32**) in early January 2023 (**Doc. 85 at 3**).

Mr. Lacey contends that an assertion of the speedy trial right is a prerequisite to claiming a speedy trial violation, (**Doc. 85 at 5**), and he is partially correct. An assertion of the right is one of the factors.

In evaluating this factor, the Court must ask "whether the defendant's behavior during the course of litigation evinces a desire to go to trial with dispatch." *Batie*, 433 F.3d at 1291. In so doing, the Court weighs the "frequency" and "force" of the assertions. *Barker*, 407 U.S. at 529. "If the defendant fails to demand a speedy trial, moves for many continuances, or otherwise indicates that he is not pursuing a swift resolution of his case, this factor weighs heavily against [him]." *United States v. Gould*, 672 F.3d 930, 938–39 (10th Cir. 2012).

Here, Mr. Lacey demanded speedy trial in January 2023—and at every hearing since. Mr. Lacey's assertions are "entitled to strong evidentiary weight" in assessing whether he is being deprived of this right. *Barker*, 407 U.S. at 532. However, despite Mr. Lacey's "frequent" assertion of the right, the Court finds that the "force" of his assertions is not particularly strong. *Barker*, 407 U.S. at 529. First, the Court notes that Mr. Lacey did not immediately assert his speedy trial right (**Doc. 32**). Second, assertions of speedy trial rights "must be viewed in light of [Defendant's] other conduct,"—including the filing of pretrial motions and the desire to proceed *pro se* (juxtaposed against his need to be competent). Finally, Mr. Lacey's conduct is at odds with his speedy trial

---

[11] The Clerk's minutes state that Mr. Lacey mentioned speedy trial and explained he does not want the case continued.

11

assertions. *Loud Hawk*, 474 U.S. at 315 (third *Barker* factor did not support defendants who made "repetitive and unsuccessful motions" while also filing speedy trial assertions).

For these reasons, the Court finds that the "assertion of right" factor does not favor Mr. Lacey (**Doc. 93 at 14**).

### D. Lack of prejudice

Prejudice, the fourth *Barker* factor, does not help Mr. Lacey. The Sixth Amendment protects against three sorts of prejudice: (1) oppressive pretrial incarceration, (2) increased anxiety, and (3) most importantly, damage to one's defense. *United States v. Garcia*, 74 F.4th 1073, 1100 (10th Cir. 2023) (quoting *Seltzer*, 595 F.3d at 1179).

Mr. Lacey asserts he suffered prejudice "because his strategy, told in open court in part, was to keep his proceedings within speedy trial time limits." **Doc. 85 at 5**.

First, fifteen months of pretrial incarceration is not *per se* oppressive. Barker, for example, was not brought to trial for over five years. *Ransom v. Roberts*, 1993 U.S. App. LEXIS 5949, at *11 (10th Cir. 1993) (unpublished). As a threshold matter, the Court finds that the delay in this case is not "extreme,"—meaning Mr. Lacey is not relieved of his burden to show particularized prejudice. *Larson*, 627 F.3d at 1209.

Second, Mr. Lacey has not alleged cognizable harms. Virtually all defendants awaiting trial in detention experience what Mr. Lacey claims to have suffered (**Doc. 85 at**). The case law requires "some special harm suffered which distinguishes his case." *Gould*, 672 F.3d at 939. Because Mr. Lacey presents no such evidence—this factor cannot favor him.

Finally, the delays here have ensured Mr. Lacey is able to represent himself, which has been his desire from the early stages of this case. "A criminal defendant may not delay his trial and then complain that it took too long." *United States v. Jones*, 2021 U.S. App. LEXIS 27295, at

12

*1 (3d Cir. 2021) (unpublished). Although the Court is fully aware that Mr. Lacey believes his ability to mount a defense is hampered, he alleges nothing more than conclusory assertions. Mr. Lacey does not mention the loss of specific evidence or unavailability of certain witnesses. *Cf. United States v. Toombs*, 574 F.3d 1262, 1275 (10th Cir. 2009) (no prejudice existed where, even assuming the first two interests were shown, the defendant did not show his defense was hindered). In fact, Mr. Lacey made clear that "everything that I need, I already have" (**Doc. 53 at 33–34**). In his motion, Mr. Lacey states that his "right to proceed *pro se* should have been protected." **Doc. 85 at 5**. What Mr. Lacey fails to realize, however, is that he could not proceed *pro se* after standby counsel filed a motion for a competency evaluation and after the mental health expert who performed the first competency evaluation determined that Mr. Lacey was not competent to stand trial. **Docs. 42 & 55**.

In that same vein, Mr. Lacey does not want to accept the fact that original standby counsel had a duty to raise competency. *See supra* ¶ II.B & n.7. With the issue of competency to stand trial having been legitimately raised, the Court was obligated to order the initial competency evaluation. Moreover, the Court was also obligated to grant the Government's motion for a second competency evaluation because at the time the Government filed the motion for a second competency evaluation, the only credible evidence in the record on the issue of competency to stand trial was the first mental competency evaluation rendered by a qualified mental health professional who opined that Mr. Lacey was not competent to stand trial (**Doc. 55**). Standby counsel, the Government, and the Court took these steps to protect Mr. Lacey's rights—as was required of them. *See Pate*, 383 U.S. at 384 (explaining the right not to stand trial while incompetent is sufficiently important to merit protection).

While Mr. Lacey may take issue with the time and the process associated with the Court obtaining a second competency evaluation by a qualified mental health professional at a Bureau of Prisons Medical Facility, the Court ultimately made a finding that Mr. Lacey was competent to stand trial and that finding was based on the second competency evaluation of Mr. Lacey conducted at the Bureau of Prisons Medical Facility. Mr. Lacey is hard pressed to take issue with the Court's finding that he's competent to stand trial since that was his stated position from the very beginning of this case. Accordingly, the Court finds that Mr. Lacey has not suffered any concrete harm and that this factor favors the Government.

## CONCLUSION

Defendant Lacey is unable to show a statutory Speedy Trial Act violation because fewer than seventy unexcludable days have elapsed from indictment to the scheduled trial date. Additionally, given the compliance with the Speedy Trial Act, the Court finds there is also no Sixth Amendment speedy trial violation under *Barker*.[12]

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (**Docs. 85 & 88**) is hereby **DENIED**.

_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[12] The Court notes for the record that it has reviewed and considered Mr. Lacey's Sealed Exhibit (**Doc. 92**) to his Motion (**Doc. 85**). The Sealed Exhibit contains a litany of complaints about former standby counsel and was apparently drafted in December 2023 but not filed until February 1, 2024. The contents of the Sealed Exhibit do not alter the Court's conclusion that there has been neither a violation of the Speedy Trial Act nor a constitutional violation of Defendant's speedy trial rights.